HEIDI WEINTRAUB & ASSOCIATES, LLC
By:     Heidi R. Weintraub, Esquire / Erica Domingo, Esquire
ID No. 008591993 / 011202009
801 N. KINGS HIGHWAY
CHERRY HILL, NJ  08034
TELEPHONE:  (856) 406-1990
FAX:  (856) 823-1944
ATTORNEYS FOR PLAINTIFF

| KRISTINA HICKEY<br><br>Plaintiff,<br><br>v.<br><br>ELAINE C. DUKE, ACTING SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY; JOHN DURKIN; LARRY SAEZ; and SCOTT CARPENDER,<br><br>Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>NEWARK VINCINAGE<br><br>Civil No.<br><br>**COMPLAINT AND<br>JURY TRIAL DEMAND** |
|---|---|

Plaintiff, Kristina Hickey (hereinafter, "Plaintiff"), by and through her undersigned attorney, hereby files this Complaint against Defendants, Elaine C. Duke, Acting Secretary, U.S. Department of Homeland Security; Supervisory Air Marshal In Charge ("SAC") John Durkin; Assistant Supervisory Air Marshal In Charge ("ASAC") Larry Saez; and ASAC Scott Carpender, (hereinafter "Defendants") and states as follows:

### INTRODUCTION

1.      This is an action for gender discrimination, hostile work environment, and retaliation pursuant to 42 U.S.C. Section 2000e *et seq*.  (Title VII of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1991 and pursuant to the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-2 *et seq.*

## JURISDICTION

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331, 28 U.S.C. Section 1343, and 28 U.S.C. Section 1346.

## VENUE

3. Venue is proper in this district pursuant to 28 U.S.C. Section 1391(b), since the events giving rise to the claims occurred in this District.

## PARTIES

4. The Plaintiff is a female who resides in Monroe, New York.

5. Defendant Elaine C. Duke is the Acting Secretary of the United States Department of Homeland Security ("DHS"), which agency is located throughout the United States of America and for whom Plaintiff worked at the New Jersey Field Office in Newark, New Jersey ("Newark Field Office").

6. At all relevant times herein, Defendant, John Durkin was the Supervisory Agent in Charge ("SAC") of the Newark Field Office, was a member of Defendant DHS's upper management, who permitted an individual with supervisory responsibility over Plaintiff to harass Plaintiff, discriminate against Plaintiff, and who created, permitted and tolerated a hostile work environment, and who, while acting within the course and scope of his engaged in and participated in a conspiracy and the wrongful acts that resulted in damage being sustained by the Plaintiff as referred to herein.

7. Defendant, Larry Saez was a member of Defendant DHS's upper management, who permitted an individual with supervisory responsibility over Plaintiff to harass Plaintiff, discriminate against Plaintiff, and who created, permitted and tolerated a hostile work environment, and who, while acting within the course and scope of his engaged in and

participated in a conspiracy and the wrongful acts that resulted in damage being sustained by the Plaintiff as referred to herein.

8. Defendant, Scott Carpender was a member of Defendant DHS's upper management, who permitted an individual with supervisory responsibility over Plaintiff to harass Plaintiff, discriminate against Plaintiff, and who created, permitted and tolerated a hostile work environment, and who, while acting within the course and scope of his engaged in and participated in a conspiracy and the wrongful acts that resulted in damage being sustained by the Plaintiff as referred to herein.

9. Plaintiff has been employed by the Defendant, DHS for the Federal Air Marshal Service (FAMS) as a Federal Air Marshal since 2007, working in the Newark Field Office.

10. At all times relevant herein, in the FAMS, approximately four percent (4%) of Air Marshals are female.

11. At all relevant times herein, approximately three percent (3%) of Air Marshals in the Newark Field Office were female.

12. At all times relevant herein, Plaintiff performed her job in a workmanlike and professional manner.

13. In her 2014-2015 performance evaluation, Plaintiff received an average rating of "Exceeds Expectations" and had never been subject to disciplinary action as of that time.

14. On or about December 20, 2015, Plaintiff was working in the Newark International Airport as the ground based liaison when she received unwanted and unsolicited text messages from an unknown phone number on her government issued iPhone asking Plaintiff about her relationship status and calling her names such as "whore," "cunt," and "tranny (transvestite)." Plaintiff was shocked and offended by the messages, and then became frightened

when she received additional messages asking her to meet in person and suggesting that whoever was sending the messages was watching her.

15. On or about December 21, 2015, Plaintiff reported the harassing messages to Assistant Federal Security Director ("ASFD") Michael Iannelli and arranged a meeting to discuss what transpired and attempt to trace the messages to determine the sender.

16. On or about December 22, 2015, Steven Rizzo, a Supervisory Federal Air Marshal ("SFAM") who occasionally acted as Plaintiff's supervisor in the absence of her direct supervisor and had the ability to control Plaintiff's pay, discipline, and personal information by virtue of his supervisory role, sent Plaintiff text messages from his government issued cell phone apologizing for the messages he sent the prior day and explaining that he was trying to teach her a lesson to stop being so nice to people.

17. On or about the same date, Plaintiff showed the messages to several of her supervisors, including SAC Durkin, ASAC Saez, ASAC Carpender, SFAM Dwane Lynch, and AFSD Iannelli, and advised them that SFAM Rizzo had admitted to sending the messages.

18. Despite Plaintiff being the victim of harassing and discriminatory conduct by her supervisor, SAC Durkin and ASAC Saez immediately expressed sympathy for SFAM Rizzo, each stating that they felt bad for him, that they hoped he was okay, and that they didn't want to lose their "best guy."

19. As a result of the meeting, SAC Durkin advised Plaintiff that he would meet with SFAM Rizzo upon his arrival at the airport to seize his phone for evidentiary purposes and question him about the allegations. Instead, plaintiff learned that SFAM Rizzo was given advanced notice that SAC Durkin wanted to meet with him relative to Plaintiff and that SAC Durkin ironed his shirt rather than participate in the meeting with SFAM Rizzo.

20. At that moment, Plaintiff realized that her complaint was not being taken seriously by management, which was later confirmed by the fact that SFAM Rizzo was written up for "misuse of a government cell phone," not for sexual harassment, and that Rizzo continued to send Plaintiff text messages through October 2016, including questioning why she "told the bosses" about his prior messages to her and saying, "They fired me! Thanks!"

21. When Plaintiff reported SFAM Rizzo's ongoing contact with her to Defendants, she was told that she could contact her local police department if she felt harassed.

22. In fact, on or about December 23, 2015, SFAM Rizzo, having been advised that his security clearance was being revoked, drove to a cemetery in Vineland, New Jersey, and engaged in a several hour standoff with local police wherein Rizzo threatened to kill himself and detonate explosives. Ultimately Rizzo was taken into custody and admitted for psychiatric evaluation, although he suffered no adverse employment action as a result of the standoff.

23. Plaintiff learned "through the grapevine" of Rizzo's standoff, which caused Plaintiff to fear for her life, and gave her pause about pursing an EEO complaint against Rizzo for fear of how he may retaliate against her; none of the named Defendants made any effort to advise Plaintiff of what was going on or to confirm her well-being.

24. When word of Rizzo's standoff spread throughout the Newark Field Office, Plaintiff began to regularly hear comments referring to "poor Rizzo," suggesting that Plaintiff had an affair with Rizzo, and shunning Plaintiff or refusing to be seen with her because of what people perceived she had done to Rizzo. These comments, combined with upper management's support for Rizzo, furthered the hostile work environment created by Rizzo and caused Plaintiff significant emotional distress and anxiety in her position with Defendants.

25. On or about January 20, 2016, Plaintiff filed an injury claim relative to the sexual harassment by Rizzo and the inadequate response by upper management in response to the admitted harassment.

26. On or about February 18, 2016, Plaintiff received an anonymous note in her locker at the Newark International Airport stating words to the effect of "Rizzo knows you filed an injury claim for sexual harassment." Although Plaintiff felt threatened, harassed, and disturbed by the note, given that she had not told anyone that she had filed an injury claim, she did not immediately report it to upper management, as they had failed to take any action to protected her in light of the already serious and admitted allegations of sexual harassment she previously brought.

27. Ultimately, on or about March 1, 2016, Plaintiff reported her receipt of the anonymous note to SAC Durkin; although SAC Durkin said he would "look into it," no action was taken to determine who had disclosed Plaintiff's confidential medical information to her harasser. Instead, Plaintiff was advised that no action or investigation could be undertaken until SFAM Rizzo was medically cleared.

28. Plaintiff also spoke ASAC Carpender about her concern that her medical information was disclosed to SFAM Rizzo and her frustration that no action was taken. In a clear effort to once again protect SFAM Rizzo, ASAC Carpender suggested no action could be taken unless Plaintiff provided the name of the alleged source of the leak.

29. Soon after Plaintiff suggested an individual who she believed may have leaked the information, in a clear act of retaliation, that individual filed a complaint against Plaintiff for an inappropriate retirement cake that Plaintiff made in 2013 ("the retirement cake incident") – almost three years prior.

30. Despite her deteriorating mental health, Plaintiff refused to take any medication. She also felt she could not discuss her condition with members of Defendant's upper management in light of their prior comments in support of SFAM Rizzo, including letting Plaintiff know that they had written character references for him.

31. Due to Defendants complete and utter failure to protect Plaintiff in the workplace by allowing a harassing and hostile work environment to perpetuate, and by protecting her harasser, Plaintiff was so traumatized that Plaintiff's medical provider advised her that she could no longer return to work as of June 29, 2016. Plaintiff was diagnosed with Post Traumatic Stress Disorder, anxiety, depression, and anhedonia, and prescribed medications which made her ineligible to continue working as an FAM.

32. Plaintiff's claim for medical leave based upon stress and depression was ultimately approved by the Department of Labor in November 2016.

33. Although Plaintiff was on a medical leave, ASAC Carpender insisted that the retirement cake incident must be investigated, and Plaintiff must be served in-person with a proposed one-day suspension.

34. Plaintiff's career with FAMS has been destroyed and her medical professionals have opined that her disability and impairment due the sexist and hostile work environment created by Defendants is permanent in nature and prevents her from performing the essential functions of her job as an Air Marshal; Plaintiff is in the process of applying for a disability retirement from Defendants.

35. Upon information and belief, SFAM Rizzo is still employed by Defendants.

36. Upon information and belief, SFAM Rizzo maintained certain privileges, including access to his government phone and email, and was permitted to return to the Newark Field Office without prior notice up to and through October 2016.

37. Upon information and belief, Defendants were aware of SFAM Rizzo's treatment of female co-workers, as he was previously investigated for allegations of discrimination against female trainees at the FAMS training center, had an EEO complaint against him for harassment of female administrative staff, and a prior workplace violence complaint by a female FAMS Medical Programs Branch Supervisor against him.

38. Upon information and belief, the investigator for the discrimination allegations brought by female trainees recommended SFAM Rizzo's removal, but no action was taken.

39. Defendants' disparate treatment of females in the workplace as compared to their male colleagues includes, but is not limited to:

    a. Plaintiff was required to use her own accrued leave time for her work related injury stemming from SFAM Rizzo's harassment, yet male FAMs who are injured at work are not required to do so;

    b. ASAC Carpender investigating and attempting to issue Plaintiff a suspension while she was on medical leave, but Defendants refusing to investigate or take action against SFAM Rizzo while he is/was on indefinite suspension;

    c. Relocating a female administrative staff member who filed an EEO Complaint against SFAM Rizzo rather than relocating Rizzo, the accused harasser;

    d. Placing Rizzo on indefinite leave rather than issuing a termination or initiating a removal action against him

    e. Upon information and belief, a female Air Marshal was immediately

proposed a ten (10) day suspension for a disagreement over deodorant at a screening checkpoint, while, upon information and belief, SFAM Rizzo has not received any discipline for his actions involving Plaintiff or the cemetery standoff.

40. Plaintiff contacted an EEO Counselor for DHS on or about July 7, 2016, shortly after being placed on leave by her doctor.

41. On or about September 26, 2016, Plaintiff filed an Individual Complaint of Employment Discrimination after receiving a "Notice of Right to File" on September 19, 2016.

42. On or about February 7, 2017, Plaintiff received a copy of Defendants' investigative file with a right to request a hearing or a final agency decision.

43. On or about March 3, 2017, Plaintiff requested a final agency decision.

44. The final agency decision was issued on September 8, 2017 with "Notice of Right to Sue" dated September 8, 2017. (See a true and correct copy of Final Agency Decision attached hereto as **Exhibit "A"**).

45. Plaintiff files the within action within ninety (90) days after receipt of her "Notice of Right to Sue" from Defendants.

## COUNT ONE – TITLE VII – GENDER DISCRIMINATION

46. Plaintiff incorporates the preceding paragraphs as though set forth at full herein.

47. Defendants' conduct as alleged at length herein constitutes discrimination based on gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

48. Plaintiff would not have been subjected to the discriminatory treatment by Defendants but for her gender – female.

49. Plaintiff was treated less favorably than workers who were similarly situated but who were not female as set forth in Paragraph 39, above.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative for compensatory damages, punitive damages, interest, attorney's fees, costs of suit and such other relief as is just and equitable.

## COUNT TWO – TITLE VII – HOSTILE WORK ENVIRONMENT

50. Plaintiff incorporates the preceding paragraphs as though set forth at full herein.

51. The hostile work environment created by Rizzo's sexual harassment of Plaintiff and perpetrated by Defendants and/or their officers, directors, supervisors, managers, employees and/or agents was severe and/or pervasive and violated Plaintiff's rights under Title VII.

52. As a direct result of the hostile work environment that existed during Plaintiff's employment with Defendants, Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation.

53. For the reasons set forth above, Defendants are jointly and severally liable for the hostile work environment suffered by Plaintiffs and are answerable in compensatory and punitive damages.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative for compensatory damages, punitive damages, interest, attorney's fees, costs of suit and such other relief as is just and equitable.

## COUNT THREE – LAD – GENDER DISCRIMINATION

54. Plaintiff incorporates the preceding paragraphs as though set forth at full herein.

55. Plaintiff was subjected to discrimination based on her gender – female – during Plaintiff's employment with Defendants, which discrimination was perpetrated by Defendants and/or their officers, directors, supervisors, managers, employees and/or agents and violated Plaintiff's rights under the LAD.

56. As a direct result of the gender discrimination suffered by Plaintiff during her employment with Defendants, Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation.

57. For the reasons set forth above, Defendants are jointly and severally liable for the gender discrimination suffered by Plaintiff and are answerable in compensatory and punitive damages.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative for compensatory damages, punitive damages, interest, attorney's fees, costs of suit and such other relief as is just and equitable.

### COUNT FOUR – LAD – HOSTILE WORK ENVIRONMENT

58. Plaintiff incorporates the preceding paragraphs as though set forth at full herein.

59. The hostile work environment created by Rizzo's sexual harassment of Plaintiff and perpetrated by Defendants and/or their officers, directors, supervisors, managers, employees and/or agents was severe and/or pervasive and violated Plaintiff's rights under the LAD.

60. As a direct result of the hostile work environment that existed during Plaintiff's employment with Defendants, Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation.

61. For the reasons set forth above, Defendants are jointly and severally liable for the hostile work environment suffered by Plaintiff and are answerable in compensatory and punitive damages.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative for compensatory damages, punitive damages, interest, attorney's fees, costs of suit and such other relief as is just and equitable.

## COUNT FIVE – CONSTRUCTIVE DISCHARGE

62. Plaintiff incorporates the preceding paragraphs as though set forth at full herein.

63. Defendants deliberately rendered Plaintiff's working conditions intolerable with the intent of forcing Plaintiff to leave her employment.

64. As a result of Defendants' unlawful actions, Plaintiff was constructively discharged from her employment.

65. For the reasons set forth above, Defendants are jointly and severally liable for the constructive discharge suffered by Plaintiffs and are answerable in compensatory and punitive damages.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative for compensatory damages, punitive damages, interest, attorney's fees, costs of suit and such other relief as is just and equitable.

## COUNT SIX – LAD – AIDING AND ABETTING

66. Plaintiff incorporates the preceding paragraphs as though set forth at full herein.

67. As set forth above, the individually named Defendants failed to take "immediate and appropriate" corrective action to protect Plaintiff from discrimination and a hostile work environment based upon her gender.

68. The individually named Defendants failed to characterize Plaintiff's complaint against Rizzo as a sexual harassment complaint, instead referring to it as "misuse of a government issued phone," which left Plaintiff without access to the resources that should be provided to victims of sexual harassment by Defendants.

69. The individually named Defendants failed to take any action with regard to SFAM Rizzo's continued harassing and threatening contact with Plaintiff, which continued for almost one year after Plaintiff's initial complaint of harassment.

70. Despite having knowledge of SFAM Rizzo's history of mistreatment of women in the workplace, he remains employed and unpunished by Defendants, demonstrating a further failure to take any action against Plaintiff's harasser.

71. The individually named Defendants allowed to persist a work environment that was sexist and discriminatory toward women.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative for compensatory damages, punitive damages, interest, attorney's fees, costs of suit and such other relief as is just and equitable.

## COUNT SEVEN – CEPA

72. Plaintiff incorporates the preceding paragraphs as though set forth at full herein.

73. Plaintiff reasonably believed that Defendants' sexual harassment of her – by and through their agent, Rizzo – was in violation of state and federal law, as well as DHS's own internal policies and procedures.

74. Plaintiff blew the whistle by reporting the sexual harassment to her supervisors.

75. Defendants retaliated against Plaintiff by their actions and inactions in responding to Plaintiff's complaint, including, but not limited to, protecting Plaintiff's harasser and fostering an environment wherein her harasser became the victim, leaving Plaintiff a pariah in the workplace.

76. There is a causal connection between Plaintiff's whistleblowing activities and the retaliation against her set forth above.

77.	Defendants' unlawful retaliatory actions and/or inactions are the proximate cause of Plaintiff's mental unfitness for duty. See <u>Donelson v. DuPont Chamber Works</u>, 206 N.J. 243, 258 (2011).

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative for compensatory damages, punitive damages, interest, attorney's fees, costs of suit and such other relief as is just and equitable.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

HEIDI WEINTRAUB & ASSOCIATES, LLC


BY: */s/ Erica Domingo*
    ERICA DOMINGO


Dated:  12/6/2017