NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KRISTINA HICKEY,<br><br>Plaintiff,<br><br>v.<br><br>KIRSTJEN M. NIELSON, *Secretary, U.S. Department of Homeland Security,*<br><br>Defendant. | Civil Action No.: 17-12660 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant U.S. Department of Homeland Security's Partial Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 21). Plaintiff has submitted Opposition to Defendant's motion (ECF No. 22), to which Defendant has replied. (ECF No. 23). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies Defendant's Partial Motion to Dismiss.

### I. BACKGROUND[1]

Plaintiff is a resident of Monroe, New York. (FAC ¶ 4). Defendant Kirstjen Nielsen is the Secretary of the United States Department of Homeland Security ("DHS") for whom Plaintiff worked at the New Jersey Field Office in Newark, New Jersey ("Newark Field Office"). (FAC ¶ 5). This action revolves around Defendant's alleged gender discrimination, creation of a hostile

---

[1] This background is derived from Plaintiff's Amended Complaint (ECF No. 18 ("FAC")), which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

work environment, retaliation, and wrongful termination of Plaintiff.

Plaintiff was employed by DHS at the Newark Field Office as a Federal Air Marshall in 2007. (FAC ¶ 9). In her First Amended Complaint, Plaintiff alleges that, on or about December 20, 2015, she received several text messages from an unknown government-issued iPhone inquiring as to Plaintiff's relationship status and calling her derogatory names, which Plaintiff asserts included highly offensive names as set forth in the Complaint in additional to names like "whore" and "tranny (transvestite)." (FAC ¶ 14). Plaintiff received additional messages asking to meet in person and indicated that she believed that someone was watching her. (Id.). Plaintiff reported the messages to Assistant Federal Security Director Michael Iannelli on December 21, 2015. (FAC ¶ 15). The following day, December 22, 2015, Steven Rizzo ("Rizzo"), a Supervisory Federal Air Marshal, sent Plaintiff text messages from his government-issued cell phone "apologizing for the messages he sent the prior day and explaining that he was trying to teach her a lesson to stop being so nice to people." (FAC ¶ 16).

Following Rizzo's apology, Plaintiff showed the text messages to several supervisors who immediately expressed sympathy for Rizzo and stated they did not want to lose their "best guy." (FAC ¶¶ 18–19). One of Plaintiff's supervisors, SAC Durkin, advised Plaintiff that he would meet with Rizzo upon his arrival at the airport, seize his phone, and question him about her allegations. (FAC ¶ 19). Plaintiff later learned that Rizzo had been notified in advance of the meeting and that SAC Durkin chose to iron his shirt rather than participate in the meeting with Rizzo as he stated he would. (Id.). Rizzo was subsequently written up for "misuse of a government cell phone" and continued to send text messages to Plaintiff through October 2016 asking her why she reported his prior messages and saying, "They fired me! Thanks!" (FAC ¶ 20). Plaintiff reported the ongoing text messaging and was instructed to contact the local police if she felt she was being harassed.

(FAC ¶ 21).

Plaintiff's mental health began to deteriorate when she learned that Rizzo had been involved in a potentially suicidal standoff with police on or about December 23, 2015 following the revocation of his security clearance. (FAC ¶ 22). Once she learned about the incident, Plaintiff feared for her life and, therefore, was hesitant to pursue an Equal Employment Opportunity Commission ("EEOC")[2] complaint against Rizzo due to fears of retaliation. (FAC ¶ 23). Additionally, as more people in the Newark Field Office learned of the stand-off, Plaintiff was subjected to co-workers suggesting that Plaintiff had an affair with Rizzo and shunning or refusing to be seen with her because people perceived she was the root of Rizzo's actions. (FAC ¶ 24).

On or about January 20, 2016, Plaintiff filed an "injury" complaint pertaining to Rizzo's sexual harassment and the inadequate response of the supervising management. (FAC ¶ 25). About a month later, on or about February 18, 2016, Plaintiff received an anonymous note in her locker which claimed that Rizzo knew of the claim she filed. (FAC ¶ 26). Plaintiff was disturbed by the note but did not report it to management until on or about March 1, 2016, due to its previous failures to protect her following the allegations of sexual harassment. (FAC ¶¶ 26-27). When the note was reported, SAC Durkin said he would "look into it," but no action was taken. (FAC ¶ 27). Further, another supervisor, ASAC Carpenter, suggested that no action could be taken until Plaintiff identified a potential source of the leak. (FAC ¶ 28). Plaintiff complied and suggested an individual who in turn reported Plaintiff for an inappropriate retirement cake that she had baked three years prior ("Cake Complaint").[3] (FAC ¶ 29).

---

[2] Plaintiff's Amended Complaint refers to the "EEO"; however, this Court gleans that Plaintiff intended to refer to the EEOC.
[3] Plaintiff allegedly baked an "inappropriate" retirement cake for a co-worker in 2013. (FAC ¶ 29). The incident went unreported until 2016. (Id.). Plaintiff alleges that the Cake Complaint was brought in retaliation for giving the individual's name as a person who may have leaked Plaintiff's confidential information. (Id.).

Plaintiff's mental health continued to deteriorate, but she refused to take medication or discuss her condition with her supervisors. (FAC ¶ 30). Plaintiff was diagnosed with Post Traumatic Stress Disorder, anxiety, depression, and anhedonia. (FAC ¶ 31). Her medical provider advised her she could not return to work as of June 29, 2016. (Id.). Additionally, Plaintiff was prescribed medications which made her ineligible to continue working as a Federal Air Marshall. (Id.). Plaintiff was approved for medical leave in November 2016. (FAC ¶ 32).

Even though Plaintiff was out on medical leave, the individual who initiated the Cake Complaint insisted the investigation go forward and that Plaintiff be served, in-person, with a one-day suspension. (FAC ¶ 33). The combination of these ongoing incidents created the allegedly sexist and hostile work environment, which Plaintiff's physicians opined caused permanent and lasting disability and impairment that prevented her from performing the essential functions of her job. (FAC ¶ 34). As a result, Plaintiff began the process of applying for disability retirement. (Id.). Plaintiff was subsequently rendered "unavailable for duty" on or about May 24, 2018. (FAC ¶ 35).

Plaintiff contacted an EEOC counselor shortly after being placed on medical leave and filed an Individual Complaint of Employment Discrimination on or about September 26, 2016. (FAC ¶ 42). Plaintiff requested a final agency decision on or about March 3, 2017 which was issued with a Notice of Right to Sue dated September 8, 2017. (FAC ¶¶ 44–45). This action was filed by Plaintiff on December 6, 2017, in accordance with the ninety-day statutory period, asserting claims sounding in Title VII of gender discrimination, hostile work environment, retaliation, and wrongful termination. (FAC ¶ 47-68). Defendant now moves to partially dismiss Plaintiff's First Amended Complaint as it relates to gender discrimination, retaliation, and wrongful termination for failure to state a claim. (ECF No. 21)

## II. LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III. ANALYSIS

Defendant argues that Plaintiff's claims as they pertain to her removal have not been

exhausted through administrative remedies, and therefore, Plaintiff fails to allege sufficient facts to form the basis of a Title VII claim. Specifically, Defendant asserts that Plaintiff's termination was a discrete act that fell outside of the scope of Plaintiff's EEOC complaint for hostile work environment.

Generally, plaintiffs may avoid the exhaustion requirement only when they raise new claims "within the scope" of an existing EEOC complaint or ensuing investigation. *See Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984); *Green v. Postmaster Gen. of the United States*, 437 F. App'x 174, 177 (3d Cir. 2011). The Third Circuit has held that there are two circumstances in which the complaints can be regarded as encompassed: (1) when the subsequent incident "falls within the scope of a prior EEOC complaint," or (2) when the second incident "falls within the scope of the EEOC investigation" of the prior complaint and there is "nothing to be served" by requiring another EEOC complaint. *Robinson v. Dalton*, 107 F.3d 1018, 1025 (3d Cir. 1997) (discussing *Waiters*, 729 F.2d at 237). Courts will consider whether the facts that underlie both complaints are substantially similar. *See Fazio v. N.J. Turnpike Auth.*, 1592012 WL 71749, at *4 (D.N.J. Jan. 10, 2012). If the initial complaint encompassed the underlying conduct that led to the discharge, there is no purpose in having Plaintiff file a second complaint. *Robinson*, 107 F.3d at 1025.

In the case at bar, each cause of action is rooted in the same factual nexus. The cause of action accrued when: (1) Rizzo sent the sexually charged messages to Plaintiff; (2) Plaintiff reported the messages to management; (3) management allegedly mishandled the claims; (4) management allegedly retaliated against Plaintiff following her complaint; and (5) Plaintiff's mental health deteriorated to the point where she was no longer able to perform the essential functions of a Federal Air Marshall. These allegations were implicated in various ways throughout

Plaintiff's EEOC complaint. To have Plaintiff complete a second complaint would begin an unnecessarily duplicative investigation. Therefore, Plaintiff has satisfied the exhaustion requirement, and the Court now focuses on whether Plaintiff has alleged sufficient facts for the Title VII claims.

Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [his or her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). The plaintiff has the initial burden of showing that she is a member of a protected class, was the subject of an adverse employment action, and that the circumstances give rise to an inference of discrimination. *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). The evidence set forth must be adequate to create an inference that an employment decision was based on illegally discriminatory criteria. *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 356 (3d Cir.1999). To prove disparate treatment based upon sex, an individual must demonstrate that she: (1) is a member of a protected class; (2) was qualified for the position she held; (3) that she suffered an adverse employment action; and (4) the adverse employment action was "under circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person of the protected class." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999) (citation omitted); *Abramson v. William Paterson College*, 260 F.3d 265, 281–82 (3d. Cir.2001) (explaining the standard for a wrongful termination claim based upon religion and noting that it mirrors the standard for race or sex discrimination).

Plaintiff is a female who was working in a traditionally male-dominated profession.[4] She had been satisfactorily performing the duties of her job for at least seven years before the incident

---

[4] Plaintiff's Amended Complaint claims that only 4% of all Air Marshalls are female, and only 3% of Air Marshalls in the Newark Field Office were female. (FAC ¶¶ 10–11).

took place and was qualified for her position. Following the receipt of sexually charged text messages, as well as the claimed subsequent shunning and shaming, Plaintiff allegedly began to suffer from mental health issues including Post Traumatic Stress Disorder. Plaintiff claims that her mental health issues ultimately resulted in her being unavailable for duty and requiring disability retirement. As a result of initiating the retirement process, Plaintiff was terminated from her position, suffering an adverse employment action. Hence, Plaintiff, at this juncture, has pled sufficient facts to meet each of the required elements and has properly asserted a *prima facie* cause of action for gender discrimination and wrongful termination.

Plaintiff also asserts a claim of retaliation. To make a *prima facie* showing of retaliation, Plaintiff must establish that: (1) she participated in protected activity; (2) her employer took an adverse employment action after or contemporaneous with the protected activity; and (3) there is a causal link between the protected activity and the employer's adverse action. *See Kant v. Seton Hall Univ.*, 289 F. App'x. 564, 567 (3d Cir. 2008) (noting that these are the three elements that a plaintiff must satisfy "[t]o advance a *prima facie* case of retaliation under section 1981, Title VII, or the NJLAD") (citing *Abramson*, 260 F.3d at 286). With respect to the second element, "a plaintiff claiming retaliation under Title VII must now show only that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Weiler v. R & T Mechanical, Inc.*, 255 F. App'x. 665, 668 n.1 (3d Cir. 2007) (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, (2006)); *see also Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006).

Following Plaintiff's filing of an "injury" complaint pertaining to Rizzo's alleged sexual harassment, Plaintiff claims to have received a note in her locker which stated that Rizzo knew she

had filed same. Plaintiff alleges that she never shared the fact that she was filing such a complaint with anyone, and was disturbed by the fact that her medical records had been leaked. After some time had passed, Plaintiff decided to report the incident to management. Following the reporting of the incident, Plaintiff was herself reported for the Cake Complaint, which apparently related to an incident that occurred three years earlier. A reasonable person, under these specific circumstances, could conclude the filing of the Cake Complaint as a retaliatory act in response to Plaintiff reporting the note, and also might be dissuaded from reporting similar incidents in the future. Thus, Plaintiff has properly pled that she participated in a protected activity and her employer took some adverse action toward her because she reported the note. Accordingly, Plaintiff, at least at this stage, has alleged sufficient facts for the retaliation claim to survive Defendant's Motion to Dismiss.

## IV. CONCLUSION[5]

For the aforementioned reasons, Defendant's Partial Motion to Dismiss is denied. An appropriate order accompanies this Opinion.

DATED: August 2, 2018

JOSE L. LINARES
Chief Judge, United States District Court

---

[5] Defendant does not contest that Plaintiff pleads a *prima facie* claim for hostile work environment.